O

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

PAUL D. G.,[1]                      )   NO. CV 17-7679-KS
        **Plaintiff,**   )
  v.                                )
                           )   **MEMORANDUM OPINION AND ORDER**
NANCY A. BERRYHILL, Acting          )
Commissioner of Social Security,    )
        **Defendant.**   )
_____ )

## INTRODUCTION

Plaintiff filed a Complaint on October 20, 2017, seeking review of the denial of his application for Supplemental Security Income ("SSI") under Title XVI of the Social Security Act. (Dkt. No. 1.) The parties have consented, pursuant to 28 U.S.C. § 636(c), to proceed before the undersigned United States Magistrate Judge. (Dkt. Nos. 9-11.) On June 19, 2018, the parties filed a Joint Stipulation. (Dkt. No. 15 ("Joint Stip.").) Plaintiff seeks an order reversing the Commissioner's decision and remanding the matter for an immediate award of benefits or, in the alternative, remanding for further proceedings. (Joint Stip. at 24-25.) The

---

[1] Partially redacted in compliance with Federal Rule of Civil Procedure 5.2(c)(2)(B) and the recommendation of the Committee on Court Administration and Case Management of the Judicial Conference of the United States.

1

Commissioner requests that the Administrative Law Judge's decision be affirmed or, in the alternative, remanded for further proceedings. (*Id.* at 25-26.) The Court has taken the matter under submission without oral argument.

## SUMMARY OF ADMINISTRATIVE PROCEEDINGS

On January 30, 2014, Plaintiff protectively filed an application for SSI.[2] (Administrative Record ("AR") 16, 76, 151-57.) Plaintiff alleged disability commencing on February 1, 2013 due to non-Hodgkin's lymphoma and severe depression.[3] (AR 66.) After the Commissioner denied Plaintiff's application initially (AR 76) and upon reconsideration (AR 87), Plaintiff requested a hearing (AR 101-03).

At a hearing held on May 25, 2016, at which Plaintiff appeared with an attorney representative, an Administrative Law Judge ("ALJ") heard testimony from Plaintiff and a vocational expert ("VE"). (AR 30-50.) On July 18, 2016, the ALJ issued an unfavorable decision denying Plaintiff's application for SSI. (AR 16-26.) On August 24, 2017, the Appeals Council denied Plaintiff's request for review. (AR 1-7.)

## SUMMARY OF ADMINISTRATIVE DECISION

Applying the five-step sequential evaluation process, the ALJ found at step one that Plaintiff had not engaged in substantial gainful activity since his application date of January 30, 2014. (AR 18; 20 C.F.R. § 416.971.) At step two, the ALJ found that Plaintiff had medically determinable impairments of anxiety, depression, deep venous thrombosis, and non-Hodgkin's lymphoma post-treatment but that these impairments were non-severe. (AR

---

[2] Plaintiff was 63 years old on the application date and thus met the agency's definition of a person of advanced age. *See* 20 C.F.R. § 416.963(e). (*See* AR 66.)

[3] Plaintiff later expressed on multiple occasions that he only wished to apply for benefits on the basis of his mental health impairments and not the non-Hodgkin's lymphoma because it was in remission. (AR 68-69, 80-81.)

18.) Accordingly, the ALJ concluded that Plaintiff was not disabled within the meaning of the Social Security Act. (AR 28.)

**STANDARD OF REVIEW**

Under 42 U.S.C. § 405(g), this Court reviews the Commissioner's decision to determine whether it is free from legal error and supported by substantial evidence in the record as a whole. *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007). "Substantial evidence is 'more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Gutierrez v. Comm'r of Soc. Sec.*, 740 F.3d 519, 522-23 (9th Cir. 2014) (citations omitted). "Even when the evidence is susceptible to more than one rational interpretation, we must uphold the ALJ's findings if they are supported by inferences reasonably drawn from the record." *Molina v. Astrue*, 674 F.3d 1104, 1111 (9th Cir. 2012) (citation omitted).

Although this Court cannot substitute its discretion for the Commissioner's, the Court nonetheless must review the record as a whole, "weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion." *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035 (9th Cir. 2007) (citation omitted); *Desrosiers v. Sec'y of Health & Human Servs.*, 846 F.2d 573, 576 (9th Cir. 1988) (citation omitted). "The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and for resolving ambiguities." *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995) (citation omitted).

The Court will uphold the Commissioner's decision when the evidence is susceptible to more than one rational interpretation. *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005) (citation omitted). However, the Court may review only the reasons stated by the ALJ in his decision "and may not affirm the ALJ on a ground upon which he did not rely." *Orn*, 495 F.3d at 630 (citing *Connett v. Barnhart*, 340 F.3d 871, 874 (9th Cir. 2003)). The Court

will not reverse the Commissioner's decision if it is based on harmless error, which exists if the error is "'inconsequential to the ultimate nondisability determination,' or that, despite the legal error, 'the agency's path may reasonably be discerned.'" *Brown-Hunter v. Colvin*, 806 F.3d 487, 492 (9th Cir. 2015) (citations omitted).

## DISCUSSION

The parties raise one issue: "[w]hether the ALJ properly considered the presence of a medically determinable severe impairment." (Joint Stip. at 3.) For the reasons discussed below, the Court concludes that this issue warrants reversal of the ALJ's decision.

### I. The ALJ Erred in Finding Plaintiff's Medical Impairments Were Non-Severe

Plaintiff contends that the ALJ erred in finding Plaintiff's mental impairments were non-severe. (Joint Stip. at 3-12.)

#### A. Facts

In June or July of 2012, Plaintiff was diagnosed with non-Hodgkin's lymphoma. (*See* AR 250, 265, 267.) Plaintiff underwent chemotherapy which appears to have been successful with the cancer going into remission sometime around November or December of 2012. (*See* AR 252.)

Plaintiff has a history of depression, but after Plaintiff learned of his cancer diagnosis, he had an episode of depression that resulted in his being admitted to the Emergency Room ("ER") on July 6, 2012 on a psychiatric hold. (AR 344-51; *see* AR 274.) Plaintiff was again

voluntarily admitted into the ER on a psychiatric hold in February 2013 after he tapered himself off of Effexor.[4] (AR 269-71, 356.)

Plaintiff began treatment with Genesis Psychiatric in August 2012. (*See* AR 363-68.) In July of 2013, Plaintiff requested that his case be closed because the "crisis [was] stabilized," his mood was better, and he did not want to take medication for depression anymore. (AR 376-77.) However, Plaintiff also received psychiatric treatment, including medication, at the Hollywood Sunset Free Clinic with Dr. Vicary from at least October 2009 through at least January 2015. (*See* AR 425, 426-47.)

**B.     Treating Psychiatrist's Medical Opinion**

Doctor William Vicary, M.D., is Plaintiff's treating psychiatrist. (AR 421-25.) He began treating Plaintiff on October 30, 2009. (AR 425.) He provided two medical opinions. The first is dated April 18, 2014. (AR 421-25.) He diagnosed Plaintiff with major depression and anxiety. (AR 425.) He listed Plaintiff's medications as Lexapro and diazepam. (AR 425.) His prognosis was that it was "possible but unlikely" for Plaintiff's mental impairments to improve if Plaintiff continued to receive treatment and medication. (AR 425.) He noted that Plaintiff had received outpatient treatment four times since February 2008. (AR 421.) He described Plaintiff's then-current attitude and behavior as "labile." (AR 422.) He listed the objective signs of Plaintiff's diagnoses as insomnia, weight loss, and vague suicidal ideas. (AR 423.) In relation to Plaintiff's functional abilities, he opined Plaintiff was "socially withdrawn," his concentration and task completion abilities were impaired by anxiety, and his adaptability skills in a work scenario were "compromised by depression." (AR 424.) Dr. Vicary's second medical opinion, dated June

---

[4]     Effexor is a prescription antidepressant that "is used to treat major depressive disorder, anxiety and panic disorder." *See* https://www.drugs.com/effexor.html.

5

26, 2015, is a handwritten note that reads: "Patient suffers from major depression and generalized anxiety disorder. Unable to sustain any meaningful work." (AR 448.)

### C. Consultative Examining Psychiatrist's Medical Opinion

Doctor Binoj Matthew, M.D., performed a psychiatric evaluation of Plaintiff on March 2, 2016. (AR 450-55.) Dr. Matthew did not have any of Plaintiff's records to review and instead relied on Plaintiff as the source of his information. (AR 450, 451.) Plaintiff reported he had depression, anxiety, and insomnia. (AR 450.) He reported he had a prior traumatic brain injury. (AR 452.) He also reported he was previously diagnosed with non-Hodgkin's lymphoma and received chemotherapy treatment that resulted in "severe side effects," which increased his symptoms of depression. (AR 541.) He stated his current medications were Zoloft and Klonopin. (AR 451.) He also indicated he had significant weight loss, concentration and memory problems, diminished thought processing speed, and suicidal thoughts. (AR 451.) He said he was hospitalized for a "few days" because of depression and suicidal ideation in 2015 and he had also received outpatient psychiatric counseling. (AR 451.) Plaintiff explained he was unable to work other than "sporadically" because he had low energy and trouble focusing resulting from his depression and his ongoing cancer treatment.[5] (AR 451.) Dr. Matthew noted that Plaintiff's "sister has severe psychiatric problems and takes five to six medications and this genetic diathesis suggests a predisposition to his mood disorder." (AR 451.) Plaintiff reported that he was not currently working but he is a piano tuner and his last job was on February 18, 2016. (AR 452.) He described his daily activities as including running errands, shopping, walking, tuning pianos, listening to music, reading, watching videos, having lunch with family, and playing guitar and chess. (AR 452.) He said his relationships with friends and family are fair, but his

---

[5] It is unclear what ongoing cancer treatment Plaintiff is referring to because the record does not include any medical progress reports from 2016.

6

family was "refusing" to provide him financial assistance. (AR 452.) He said he handles his own finances. (AR 452.)

Dr. Matthew's mental examination of Plaintiff showed he appeared older than his stated age and his behavior and attitude were relaxed, cooperative, and pleasant with slow body movement and good eye contact. (AR 453.) His speech volume and tone were soft, his rate was normal, and he was clear and coherent. (AR 453.) His mood was depressed, and his affect was sad and constricted. (AR 453.) He did not display psychomotor retardation and denied suicidal and homicidal ideations. (AR 453.) His thought processes, content, and perception all appeared normal. (AR 453.) He was drowsy but oriented to time, place, person, and purpose. (AR 453.) He remembered three out of three objects immediately, but only one out of three after five minutes. (AR 453.) He was able to perform two rounds of Serial sevens and four rounds of Serial threes, but Dr. Matthew noted significant time lag. (AR 453.)

Dr. Matthew diagnosed Plaintiff with severe major depressive disorder and general anxiety disorder. (AR 454.) He found Plaintiff had occupational, economic, health, and primary support group problems. (AR 454.) He assessed Plaintiff's GAF score at 50.[6] (AR 454.) Dr. Matthew opined Plaintiff has mild limitations in his ability to follow simple

---

[6] "GAF" refers to Global Assessment of Functioning. *See Diagnostic and Statistical Manual of Mental Disorders*, 4th ed. ("DSM IV"). GAF scores from 41 through 50 are consistent with "serious" symptoms or serious impairment in social, occupational, or school functioning, including suicidal ideation, inability to keep a job, and lack of friends. *Id.* A score of 51 to 60 signifies "moderate" symptoms, such as flat affect or occasional panic attacks, or moderate difficulty in social, occupational, or school functioning, such as having few friends or conflicts with peers or co-workers. *Id.* A score in the range of 61 through 70 denotes some "mild" symptoms, such as depressed mood or mild insomnia, or some difficulty in social, occupational, or school functioning, such as occasional truancy or theft within the household, but indicate that the subject is generally functioning pretty well and has some meaningful interpersonal relationships. *Id.* GAF scores have been described as a "rough estimate of an individual's psychological, social, and occupational functioning used to reflect the individual's need for treatment." *Vargas v. Lambert,* 159 F.3d 1161, 1164 n. 2 (9th Cir. 1998) (citation omitted). However, pursuant to Agency regulations, the GAF scale has no "direct correlation to the severity of requirements in Social Security Administration mental disorder listings." *See* 65 Fed. Reg. 50746, 50764-6. "The DSM V no longer recommends using GAF scores to measure mental health disorders because of their 'conceptual lack of clarity . . . and questionable psychometrics in routine practice.'" *Olsen v. Comm'r Soc. Sec. Admin.*, 2016 WL 4770038, at *4 (D. Or. Sept. 12, 2016) (quoting DSM-V, 16 (5th ed. 2013)).

instructions and severe limitations in his ability to follow detailed instructions. (AR 454.) He opined Plaintiff has moderate limitations interacting with the public, coworkers, and supervisors. (AR 545.) He opined Plaintiff has severe limitations complying with job rules, responding to changes in a routine work setting, and responding to usual work pressures. (AR 455.) He also opined Plaintiff's daily activities were severely limited. (AR 455.) Dr. Matthew's prognosis of Plaintiff's mental conditions was poor. (AR 455.)

### D. State Agency Doctors' Medical Opinions

Doctor Paul Klein, PsyD., reviewed Plaintiff's application at the initial level on May 5, 2014. (AR 66-75.) He reviewed Plaintiff's treating physician's first medical opinion, but not the second opinion or the consultative examiner's opinion. (*See* AR 69-70.) Dr. Klein diagnosed Plaintiff with severe affective disorder and severe anxiety disorder. (AR 70.) He opined Plaintiff had mild restrictions on his daily activities, moderate difficulties maintaining social function, moderate difficulties maintaining concentration, persistence, or pace, and found there was insufficient evidence to determine if there were repeated episodes of decompensation of extended duration. (AR 70.) He found Plaintiff's impairments could produce his alleged symptoms and his statements about the limiting effects of his symptoms were supported by the objective medical evidence. (AR 71.) Dr. Klein found Plaintiff's RFC included some moderate limitations in understanding and memory, sustaining concentration and persistence, social interactions, and adaptation abilities. (AR 72-73.) Overall, Dr. Klein found Plaintiff not disabled. (AR 74.)

Doctor Harvey Bilik, PsyD., reviewed Plaintiff's application at the reconsideration level on August 12, 2014. (AR 77-86.) Dr. Bilik noted that Plaintiff did not allege new or worsening symptoms and diagnosed Plaintiff with severe affective disorder and severe anxiety disorder. (AR 81.) Dr. Bilik's opinion of Plaintiff's impairments was largely the same as Dr. Klein's. (AR 66-75, 77-86.) However, Dr. Bilik's opinion differed in that he

found Plaintiff only partially credible, citing Plaintiff's activities of daily living and medication treatment as factors that suggested he could still perform simple work. (AR 72-73, 83-85.) His assessment of Plaintiff's RFC was also largely the same as Dr. Klein's. (AR 84.) Dr. Bilik also found Plaintiff not disabled. (AR 86.)

E. Applicable Law

The Commissioner defines a severe impairment as "[a]n impairment or combination of impairments . . . [that] significantly limit[s] your physical or mental ability to do basic work activities," including, *inter alia*: "understanding, carrying out, and remembering simple instructions; use of judgment; responding appropriately to supervision, co-workers and usual work situations; and dealing with changes in a routine work setting." 20 C.F.R. §§ 404.1521, 416.921. "An impairment or combination of impairments may be found not severe only if the evidence establishes a slight abnormality that has no more than a minimal effect on an individual's ability to work." *Webb v. Barnhart*, 433 F.3d 683, 686 (9th Cir. 2005) (citations omitted). If "an adjudicator is unable to determine clearly the effect of an impairment or combination of impairments on the individual's ability to do basic work activities, the sequential evaluation should not end with the not severe evaluation step." *Id.* at 687 (citation omitted). "Step two, then, is a *de minimis* screening device [used] to dispose of groundless claims, and an ALJ may find that a claimant lacks a medically severe impairment or combination of impairments only when his conclusion is clearly established by medical evidence." *Id.* (emphasis added) (citations omitted).

Finally, an ALJ is required to consider all of the limitations imposed by a claimant's limitations, even those that are not severe. *Carmickle v. Comm'r, SSA*, 533 F.3d 1155, 1164 (9th Cir. 2008). "Even though a non-severe 'impairment standing alone may not significantly limit an individual's ability to do basic work activities, it may – when

considered with limitations or restrictions due to other impairments – be critical to the outcome of a claim.'" *Id.* (quoting Social Security Ruling 96–8p (1996)).

F.   **Analysis**

After summarizing Plaintiff's medical record, the ALJ found the objective medical evidence did not support Plaintiff's allegation that he could not perform basic work functions. (AR 22.) The ALJ also found mediations help Plaintiff's mental impairments, Plaintiff is not entirely credible, and none of the psychiatric medical opinions deserved significant weight. (AR 20-25.)

There are three categories of physicians: treating physicians, examining physicians, and nonexamining physicians. *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995); *see* 20 C.F.R. 416.927.[7] Treating physician opinions should be given more weight than examining or nonexamining physician opinions. *Orn*, 495 F.3d at 632. This is because a treating physician "is employed to cure and has a greater opportunity to know and observe the patient as an individual." *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989) (citation omitted). If the treating physician's opinion is not contradicted by another doctor, it may be rejected only if the ALJ provides "clear and convincing reasons supported by substantial evidence in the record." *Orn*, 495 F.3d at 632. If the treating physician's opinion is contradicted by another doctor, it may be rejected only by "specific and legitimate reasons supported by substantial evidence in the record." *Id.* Similarly, an ALJ must satisfy the clear and convincing reasons standard to reject an uncontradicted examining physician's opinion or satisfy the specific and legitimate reasons standard to reject a contradicted examining physician's opinion. *Carmickle*, 533 F.3d at 1164.

---

[7]   Effective March 27, 2017, the Social Security Administration revised its regulations directing the evaluation of medical opinion evidence, including 20 C.F.R § 416.927. But these revisions are not applicable or relevant to the analysis here relating to Plaintiff's January 30, 2014 application for SSI benefits.

10

All four of the physicians that provided medical opinions in this case agree that Plaintiff has depression, or an affective disorder, and anxiety and that these mental impairments are severe. (*See* AR 421-25, 450-55, 66-75, 77-86.) Because none of the opinions contradict each other concerning whether Plaintiff's depression and anxiety are severe, the ALJ needed to provided clear and convincing reasons to reject this opinion. *Id.*

The ALJ's first reason for rejecting all four doctors' opinions that Plaintiff's mental impairments are severe is that the objective medical evidence does not support it. (AR 25.) However, the Ninth Circuit held that a doctor's medical opinion based on clinical observations "is competent psychiatric evidence." *Sprague v. Bowen*, 812 F.2d 1226, 1232 (9th Cir. 1987). Plaintiff's treating physician in *Sprague* did not specialize in psychiatry but he did treat Plaintiff's depression and prescribe psychotherapeutic medication, so his opinion on Plaintiff's mental condition qualified as evidence of a mental impairment. *Id.* at 1231-32. The Ninth Circuit has also held specifically in the context of mental impairments that "disability may be proved by medically-acceptable clinical diagnoses, as well as by objective laboratory findings." *Bilby v. Schweiker*, 762 F.2d 716, 719 (9th Cir. 1985) (citation omitted). Here, Plaintiff's treating physician, the examining physician, and both state agency non-examining physicians have offered diagnoses of severe mental impairment. (*See* AR 421-25, 450-55, 66-75, 77-86.) These diagnoses are the supporting medical evidence. *Sprague*, 812 F.2d at 1232; *Bilby*, 762 F.2d at 719. Therefore, the ALJ's contention that the record lacks objective medical evidence of a severe mental impairment does not satisfy the clear and convincing standard.

The second reason the ALJ relies on to reject the medical opinions is that Plaintiff's daily activities are inconsistent with severe mental impairments. (AR 25.) The daily activities the ALJ cites to include eating, listening to the radio, going for a walk, shopping for groceries, watching television, cleaning the house, reading, studying chess games, talking to neighbors or to people while shopping, helping a neighbor, and attending reading events at

the library. (AR 25, 178-85.) The ALJ does not explain and the Court fails to see how any of these activities undermine the severity of Plaintiff's depression and anxiety. *See Garrison v. Colvin*, 759 F.3d 995, 1016 (9th Cir. 2014) (discussing when activities of daily living should be considered inconsistent with subjective pain testimony). Plaintiff has discretion whether and when to perform these activities with perhaps eating, which is necessary for survival, and shopping for groceries, which enables eating, as exceptions. Further, the record includes evidence of fluctuating weight and weight loss suggesting that Plaintiff may not consistently receive nourishment. (AR 365, 378, 423, 426-47, 453.) In any event, the state agency doctors were able to review the record cited by the ALJ listing these activities (*see* AR 70, 82, 178-85), the examining physician had a similar understanding of Plaintiff's daily activities (AR 452), and Plaintiff's treating physician likely has an idea of Plaintiff's daily activities, yet none of these doctors altered their diagnosis of Plaintiff's mental impairments being severe because of his daily activities. Thus, these diagnoses are still supporting medical evidence despite Plaintiff's daily activities. *Sprague*, 812 F.2d at 1232; *Bilby*, 762 F.2d at 719. Accordingly, Plaintiff's daily activities are not a clear and convincing reason to reject these four medical opinions regarding the severity of Plaintiff's mental impairments.

The ALJ also specifically mentions Plaintiff's ability to tune pianos as a reason to find these medical opinions are wrong in stating his mental impairments are severe. (AR 25.) "Nor are such opinions consistent with… the claimant's admitted and undoubted ability to perform skilled and precise work as a piano tuner over many years and up through the present time." (AR 25.) The ALJ also noted that Plaintiff earned only $4,060 in 2014 from piano tuning and therefore found this did not qualify as substantial gainful activity. (AR 18.) Plaintiff's treating physician knew Plaintiff tunes pianos and still wrote Plaintiff is "unable to sustain any meaningful work." (AR 422, 428, 435, 447, 448.) The examining physician also knew. (AR 451.) The non-examining physicians do not mention it, but they presumably had access to his work history report which states he is a self-employed piano tuner. (AR 195-96.) No date appears on the work history report, but the Index indicates the report date is

March 7, 2014 which predates both non-examining physician's opinions. (AR Index; *see* AR 66-75, 77-86.) Again, the ALJ fails to explain and the Court fails to see why Plaintiff's ability to tune pianos on an infrequent basis is inconsistent with a diagnosis of severe depression and anxiety. *See Garrison*, 759 F.3d at 1016. Plaintiff's treating physician and the examining physician both noted in their opinions that Plaintiff tunes pianos, so their diagnoses are still supporting medical evidence. *Sprague*, 812 F.2d at 1232; *Bilby*, 762 F.2d at 719. Perhaps the ALJ thinks Plaintiff's ability to perform "skilled and precise work" tuning pianos is inconsistent with the doctors' opinions that Plaintiff is unable to follow detailed instructions (*see* AR 25, 72-73, 83-85, 424, 454), but there is simply not enough evidence in the record to support such an assumption. While it may be "skilled and precise work," piano tuning is a skill Plaintiff already knows how to do, so he would not need to be given instructions to follow. Further, no psychiatric expert has opined that skilled and precise work tuning pianos is inconsistent with severe depression or anxiety. Moreover, as Plaintiff emphasizes, nothing in the record indicates that Plaintiff's earnings from piano tuning ever rose to the legal of substantial gainful activity. (Joint Stip. at 10-12; AR 162-64.) Plaintiff himself testified that his work as a piano tuner was sparse and occasional, never a full-time occupation. (AR 35.) Therefore, Plaintiff's sporadic piano tuning activity is also not a clear and convincing reason to reject the medical opinion of the treating physician or examining physician.

Lastly, the ALJ rejected the doctors' opinions because he found they relied on Plaintiff's credibility, which the ALJ also rejected. (AR 25.) The ALJ states "it appears [all four doctors] relied quite heavily on the subjective report of symptoms and limitations provided by the claimant and seemed to accept uncritically as true most, if not all, of what the claimant reported." (AR 25.) Before rendering their opinions, both the treating and examining doctors personally observed Plaintiff. Medical opinions and diagnoses based on clinical observations are acceptable forms of evidence that can show mental disability. *Sprague*, 812 F.2d at 1232; *Bilby*, 762 F.2d at 719. The treating physician listed in his first

opinion that evidence that supported his diagnosis included insomnia, weight loss, and vague ideations of suicide. (AR 423.) Insomnia, weight loss, and suicidal ideation are documented in his treatment notes. (*See* AR 426-47.) Although the doctors may have relied on Plaintiff's subjective complaints to some extent in rendering their opinions, this is not a clear and convincing reason to reject the medical opinions of two psychiatric doctors who observed Plaintiff in a clinical setting and agree he has severe depression and anxiety. It is an even less convincing reason with respect to Plaintiff's treating physician, who has observed and treated Plaintiff over an extended period of time. *See Magallanes*, 881 F.2d at 751.

None of the reasons relied on by the ALJ satisfy the clear and convincing standard for rejecting the uncontradicted opinion of a treating or examining physician. Because there are four doctors who agree that Plaintiff has severe mental impairments and none of the ALJ's reasons for rejecting these opinions are legally sufficient, Plaintiff has provided sufficient evidence to satisfy Step Two's *de minimis* standard for establishing a severe impairment. *See Webb*, 433 F.3d at 687 (citation omitted). It was therefore legal error for the ALJ to find Plaintiff not disabled based on the determination of no severe mental impairment at Step Two. The error was not harmless because it affects the ultimate question of disability. *Brown-Hunter v. Colvin*, 806 F.3d 487. Accordingly, remand is warranted and the ALJ is directed to continue the sequential analysis of whether Plaintiff is disabled. *See Webb*, 433 F.3d at 688 (citation omitted).

## CONCLUSION

Accordingly, for the reasons stated above, IT IS ORDERED that the decision of the Commissioner is REVERSED AND REMANDED for further administrative proceedings consistent with this Order.

//

IT IS FURTHER ORDERED that the Clerk of the Court shall serve copies of this Memorandum Opinion and Order and the Judgment on counsel for plaintiff and counsel for defendant.

LET JUDGMENT BE ENTERED ACCORDINGLY.

DATE: January 29, 2019

*Karen L. Stevenson*
KAREN L. STEVENSON
UNITED STATES MAGISTRATE JUDGE